**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHESTER UPLAND SCHOOL DISTRICT, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| COMMONWEALTH OF PENNSYLVANIA, | : | NO. 12-132 |
| et al. | : | |

**MEMORANDUM RE: DEFENDANTS' MOTION
TO DISMISS THE AMENDED COMPLAINT**

Baylson, J.                                                                    April 17, 2012

I.        **Introduction**

        The briefs related to the Motion to Dismiss filed by the Commonwealth of Pennsylvania,

Pennsylvania Department of Education, Governor Corbett and Secretary Tomalis raise a number

of issues, but they can largely be grouped into four separate categories:

        1.        Ripeness - the claims are not "ripe" because the schools are currently functioning

and there is no harm being suffered by anyone, and any future harm is speculative.

        2.        Lack of standing - the named Plaintiffs and Intervenors do not have a sufficient

interest in the lawsuit to satisfy the constitutional and judicial standards for standing to sue.

        3.        Failure to exhaust administrative remedies - Plaintiffs have not asserted their

claims under the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C.

§ 1400 et seq., through administrative channels such as a due process hearing before filing their

claims in this Court.

        4.        Failure to state a claim - the claims are not supported by facts, are legally

insufficient, or do not show that the Plaintiffs are entitled to relief.

        Although the Court will deal with the arguments and the grounds raised by the

Defendants in some detail, the Court has concluded that the case will go forward, limited to federal statutory claims under the IDEA statute and the Rehabilitation Act, brought by Plaintiffs, including Chester Upland School District ("District") and Intervenors, Pennsylvania-NAACP and parents of children attending schools in the District.  As previously stated, this case and the upcoming trial will not concern disputes between the District schools and charter schools.

For the reasons stated below, all federal constitutional claims have been stayed, and will be dismissed without prejudice with leave to file a Second Amended Complaint within ninety (90) days.[1]

## II.    Legal Standard

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), courts may look only to the facts alleged in the complaint and its attachments.  Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).  Courts must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff.  Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985).

A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Iqbal clarified that the Court's decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), which required a heightened degree of fact pleading in an antitrust case, "expounded the pleading standard for 'all

---

[1]    The Court delineated the bases for this Court's jurisdiction, the identities of the parties, the Plaintiffs' factual allegations,  and the procedural background of this case in its Memorandum dated March 16, 2012 (ECF No. 90) and need not repeat such details here.

civil actions.'" 555 U.S. at 684.

Iqbal explained that although a court must accept as true all of the factual

allegations contained in a complaint, that requirement does not apply to legal conclusions;

therefore, pleadings must include factual allegations to support the legal claims asserted.  Id. at

678, 685.  "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice."  Id. at 678 (citing Twombly, 550 U.S. at 555); see also

Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) ("We caution that without

some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she

provide not only 'fair notice,' but also the 'grounds' on which the claim rests." (citing Twombly,

550 U.S. at 556 n.3)).  Accordingly, to survive a motion to dismiss, a plaintiff must plead

"factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

## III.   Discussion

### A.   Ripeness

"Ripeness," as a legal concept, relates largely to the ability of the Court to grant relief.

Some claims are premature, and other claims are stale or "moot."  Defendants contend that

Plaintiffs' and Intervenors' claims are not ripe because they rest on mere hypothetical scenarios

regarding a lack of funds, closure of the schools, and attendant lack of education—including

special education—for any student in the District. Defs. Br. at 8.  However, this case is timely

and the Court believes that proceeding with this case is necessary and essential to granting the

relief which the Plaintiffs and Intervenors seek, assuming they can prove their case by the

applicable burden of proof.

3

Article III of the Constitution limits the exercise of federal judicial power to adjudication of actual cases or controversies.  Toll Bros., Inc. v. Twp. of Readington, 555 F.3d 131, 137 (3d Cir. 2009).  This limitation is enforced through several justiciability doctrines, including ripeness[2] and standing, id., and applies even in cases involving only declaratory and injunctive relief.  Peachlum v. City of York, 333 F.3d 429, 433 (3d Cir. 2003) (quoting Presbytery of N.J. of Orthodox Presbyterian Church v. Florio, 40 F.3d 1454, 1462 (3d Cir. 1994)).  "Ripeness is a justiciability doctrine intended to prevent a court from entangling itself in abstract disagreements by avoiding premature adjudication."  Stanton v. City of Philadelphia, No. 10-cv-2726, 2011 WL 710481, at *2 (E.D. Pa. March 1, 2011) (quoting Save Ardmore Coal. v. Lower Merion Twp., 419 F. Supp. 2d 663, 669-70 (E.D. Pa. 2005) (citing Nat'l Park Hospitality Ass'n v. Dep't of the Interior, 538 U.S. 803, 807 (2003))).  "The following considerations underpin the ripeness doctrine: are the parties in a sufficiently adversarial posture to be able to present their positions vigorously; are the facts of the case sufficiently developed to provide the court with enough information on which to decide the matter conclusively; and is a party genuinely aggrieved so as to avoid expenditure of judicial resources on matters which have caused harm to no one."  Peachlum, 333 F.3d at 433-34.  To determine if a case is ripe, courts must consider "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration."  Abbott Labs. v. Gardner, 387 U.S. 136, 149 (1967) (overruled on other grounds by Califano v. Sanders, 430 U.S. 99, 105 (1977)).  The Third Circuit has summarized the relevant considerations under both prongs of the ripeness test set forth by the Supreme Court in

---

[2]     The ripeness doctrine also finds its roots in "prudential reasons for refusing to exercise jurisdiction."  Nat'l Park Hospitality Ass'n v. Dep't of the Interior, 538 U.S. 803, 808 (2003).

Abbott Labs:

> Factors relevant to the "fitness" consideration include, but are not
> limited to, whether the issue is purely legal (as against factual), the
> degree to which the challenged action is final, whether the claim
> involves uncertain and contingent events that may not occur as
> anticipated or at all, the extent to which further factual
> development would aid decision, and whether the parties to the
> action are sufficiently adverse.  The "hardship" consideration
> focuses on whether a plaintiff faces a direct and immediate
> dilemma, such that lack of review will put it to costly choices.

NE Hub Partners, L.P. v. CNG Transmission Corp., 239 F.3d 333, 342 n.8 (3d Cir. 2001)

(citation omitted).  Defendants' argument centers on the Supreme Court's instruction that "[a]

claim is not ripe for adjudication if it rests upon contingent future events that may not occur as

anticipated, or indeed may not occur at all." Texas v. United States, 523 U.S. 296, 300 (1998)

(quotation marks omitted).

The Court's experience with the emergency nature of the funding disputes surrounding

the District in the last several months, which required judicial action, show that the claims of the

District, the parents and the students, which number thousands of people, are "ripe."  All

concerned need to know that the schools will open and operate, particularly with regard to the

areas of federal concern, i.e., students with disabilities being educated in the least restrictive

environment, for the next school year, starting in September 2012, and going through June 2013,

and possibly beyond.  The cause of the current crisis is disputed, but the Court need not decide

that issue in order to conclude that the Plaintiffs' claims are ripe.  The cause may not even be

relevant, and the Court does not seek blame, except for the purpose of finding a solution.

Plaintiffs have satisfied the legal test for ripeness.

Opening and operating a school district for the school year is not like opening a candy

store for business.  Teachers, parents and students must prepare.  Because of resignations or other vacancies, new teachers may have to be hired.  Parents of students with disabilities, who want to do a good job in preparing their children for school, cannot wait for opening day to discover that their school is closed, or that the schools will not offer the programs, in the least restrictive environment, as federal law requires.  Nor can the Court wait until the day, week or month before the scheduled opening to adjudicate fairly disputes about the programs for children with disabilities.

Under Pennsylvania law the state legislature must set a budget for each calendar year, to be enacted by June 30 of the prior year.  As any Pennsylvanian with some awareness of state government knows, sometimes the Legislature meets the deadline and sometimes it does not.  This Court has no control over that situation, but concludes that delaying this case, relative to the 2012-13 school year, until after June 30, i.e., adopting a "wait and see" attitude, is too risky.

However, as the Court's Scheduling Order notes, the factual record may remain open past June 30, 2012 to take into account any legislative action taken by June 30, 2012.  Nonetheless, testimony must be taken promptly to make a record, so the Court can decide, well before the scheduled school opening, if federal law will be followed regarding the provision of educational programs for children with disabilities in the least restrictive environment.  This will be the focus of the trial, scheduled to start on May 7, 2012.  Although the Court intends to make factual findings as soon as possible after the testimony is concluded, the Court will reserve the opportunity to supplement and/or amend the factual findings and legal conclusions and, if Plaintiffs and Intervenors prevail, may not determine the scope of any relief until after June 30, 2012 to take into account any legislative action by that date.  The Court must also leave some

6

time for a possible appeal.

Experience dealing with this case for the 2011-12 school year has shown that there is, without question, a shortfall in the amount of revenues available to the District compared to its expenses.  The Secretary of Education has (commendably in this Court's view) agreed to make up this shortfall by advancing emergency funds to the District for the school year ending June 2012.  This result has been accomplished, in part, by not providing charter schools with all the funds to which they are allegedly entitled, by use of emergency funds, and by prioritizing bills according to their urgency and delaying payment of a number of third party bills.  As a consequence, insufficient funds may be available for the 2012-13 school year because money was used to pay for services in the 2011-12 school year.

Thus, unless the Legislature appropriates significantly more money, or other sources of funds become available, it is highly likely that the emergency situation which existed for the current school year will continue to exist for the forthcoming school year, and thus, the Court believes that this dispute is "ripe."

Whatever its faults may be, the District is duty bound to operate its schools in accordance with federal and state law, and should not have to do so as if a fire drill is proceeding on a day-to-day basis.[3]  Thus, this Court considers it its responsibility to establish standards and processes to ensure the schools will stay open and provide services for children with disabilities in the least restrictive environment throughout the 2012-13 school year.  The Court cannot wait until the last minute to receive testimony and make a reasoned decision based on the record and the law – and

---

[3]      Although the District consistently claims that its cash shortfall is substantially due to preferences given to charter schools, this Court has repeatedly ruled that this topic is not a federal court issue.

also allow opportunity for appellate review.

### B.      Standing

At least one of the Plaintiffs or Intervenors in this case has standing, most likely the

parents of children receiving special education services.  District parents of students with

disabilities seek to represent a "class" under Rule 23.  Whether the District, the School Board,

the Pennsylvania NAACP, or other Plaintiffs have standing, may have to be determined based on

the proofs at trial.  The Court need not decide this issue in ruling on a Rule 12 motion.  To have

standing, a plaintiff must satisfy three elements:

> First, the plaintiff must have suffered a concrete, particularized
> injury-in-fact, which must be actual or imminent, not conjectural or
> hypothetical.  Second, that injury must be fairly traceable to the
> challenged action of the defendant, and not the result of the
> independent action of some third party not before the court.  Third,
> the plaintiff must establish that a favorable decision likely would
> redress the injury.

Toll Bros., 555 F.3d at 137-38 (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560

(1992)) (internal quotation marks and citations omitted)[4].

This case is not a battle in which all of the soldiers on the Plaintiffs' side are going to be

vanquished because of lack of standing.  Plaintiffs have sufficiently alleged concrete,

particularized harm in the form of educational cuts, and imminent harm in the form of a complete

denial of all education should the District be forced to close the doors of its schools.  This harm

allegedly stems directly from Defendants' actions, including misuse of IDEA funds and other

---

[4]      Standing and ripeness "require related but distinct inquiries"—"[w]hereas
ripeness is concerned with when an action may be brought, standing focuses on who may bring a
ripe action." Pa. Family Inst. v. Black, 489 F.3d 156, 165 (3d Cir. 2007) (quoting Pic-A-State
Pa., Inc. v. Reno, 76 F.3d 1294, 1298 n.1 (3d Cir. 1996)).

funding decisions that Plaintiffs and Intervenors allege has landed the District in this condition,

and a Court order would resolve the alleged controversies.  When the trial is over, it is likely that

at least one Plaintiff will have proven standing to litigate the issues, and if that party satisfies the

burden of proof and the legal requirements, will be entitled to receive relief from this Court.  If a

class action is allowed, the relief may be awarded to the entire class.  Thus, the Court will

postpone the specific issues of standing until trial.  The evidence and the proofs presented at trial

will guide the Court in applying the legal standards of standing.

  **C.**  <u>**Failure to Exhaust Administrative Remedies**</u>

  Defendants contend that the Court must dismiss all claims because Plaintiffs and

Intervenors have not exhausted their administrative remedies as required under the IDEA, 20

U.S.C. § 1415(i)(2)(A).  Defendants concede that there is an exception to the IDEA exhaustion

requirement "where exhaustion would be futile or inadequate."  Defs. Br. at 20 (citing <u>Komninos</u>

<u>v. Upper Saddle River Bd. of Educ.</u>, 13 F.3d 775, 778 (3d Cir. 1994)).  In addition, a plaintiff

need not exhaust his IDEA remedies "where the issue presented is purely a legal question,"

"where the administrative agency cannot grant relief[,]" or "when exhaustion would work 'severe

or irreparable harm upon a litigant." <u>Komninos</u>, 13 F.3d at 778 (internal quotation marks

omitted).  As noted in this Court's March 16th Memorandum, in <u>Beth V. ex rel. Yvonne V. v.</u>

<u>Carroll</u>, 87 F.3d 80 (3d Cir. 1996), the Third Circuit clarified that plaintiffs who "allege systemic

legal deficiencies and, correspondingly, request system-wide relief" are also excused from the

IDEA's exhaustion requirement. 87 F.3d at 89.  The Third Circuit explained in <u>Beth</u> that "[t]o the

extent that this exception merely flows implicitly from, or is in fact subsumed by, the futility and

no-administrative-relief exceptions, we view it as among traditionally respected bases for a

waiver of § 1415's exhaustion requirement." Id.  Recently, Judge Davis of this Court applied this

exception. P.V. ex rel. Valentin v. Sch. Dist. of Philadelphia, No. 11-cv-4027, 2011 WL 5127850

(E.D. Pa. Oct. 31, 2011) (Davis, J.).  After recognizing that the Third Circuit has not defined

"systemic" in this context, he relied on other courts' determinations that "an IDEA claim is

systemic if it implicates the integrity or reliability of the IDEA dispute resolution procedures

themselves, or requires restructuring the education system itself in order to comply with [the]

IDEA, while a claim is not systemic if it involves only a substantive claim having to do with

limited components of a program, and if the administrative process is capable of correcting the

problem." Id. at *7 (internal quotation marks omitted) (citing Doe v. Ariz. Dep't of Educ., 111

F.3d 678, 682 (9th Cir. 1997); MG ex rel. LG v. Caldwell–West Caldwell Bd. of Educ., No.

09–cv-1869, 2011 WL 2607523, at *7 (D.N.J. June 30, 2011) (citing Grieco v. N.J. Dep't of

Educ., No. 06-cv-4077, 2007 WL 1876498, at *6 (D.N.J. June 27, 2007))).

      Plaintiffs and Intervenors have alleged an imminent denial of a Free Appropriate Public

Education ("FAPE") and other services required under the IDEA for all eligible children in the

District.  This alleged imminent denial stems from system-level funding problems including a

special education funding scheme which allegedly violates the IDEA and the Constitution and

Defendants' alleged misuse of federal IDEA dollars.  Providing Plaintiffs and Intervenors relief

may require the state and/or District to restructure the education of students with disabilities.  No

administrative hearing officer could adequately address these claims on an individual basis.

Rather, the Court finds Plaintiffs' and Intervenors' claims fit squarely into the systemic legal

deficiencies/system-wide relief exception articulated in Beth.

      To the extent Defendants' argument also applies to exhaustion under Section 504, the

Court rejects the argument for the same reasons. See Derrick v. Red Lion Area Sch. Dist., 586 F. Supp. 2d 282, 295 (M.D. Pa. 2008) ("Where a plaintiff brings an action under Section 504 . . . seeking relief that is also available under the IDEA, exhaustion of the administrative remedies provided by the IDEA is required 'to the same extent as would be required had the action been brought under [the IDEA].'" (quoting 20 U.S.C. § 1415(l))).

## D. Failure to State a Claim

The Court has determined, sua sponte, to sever Plaintiffs' claims and to designate the federal statutory issues for the trial starting May 7, 2012. The Court has authority to order separate trials "of one or more separate issues, claims. . . ." Fed. R. Civ. P. 42. Therefore, all of the federal constitutional claims alleged by Plaintiffs and Intervenors will be severed from the federal statutory claims, and Plaintiffs will be required to file a Second Amended Complaint. The Court urges Plaintiffs and Intervenors to join forces and file a single Second Amended Complaint with the constitutional claims delineated.[5]

### 1. Federal Constitutional Claims

Applying the Supreme Court's decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Court must conclude that the federal Constitutional claims in Plaintiffs' Amended Complaint and Intervenors' Complaints do not satisfy the standards set by the Supreme Court for requiring at least some factual allegations "showing" that the Plaintiffs are entitled to relief. The constitutional claims in the present pleadings are vague, overlapping and confusing. The Second Amended Complaint should

---

[5]     To the extent the Intervenors assert claims against the District and/or its Board, and therefore cannot combine its claims with Plaintiffs, Intervenors should still endeavor to align their claims to the extent possible.

11

delineate specifically what constitutional provisions are relied upon, and the facts supporting each one of those claims.  The Court believes that there are extensive statistics and published data on the subject matter of this case, available in Pennsylvania, and the Plaintiffs can, should, and must support their very broad based claims of denial of equal protection, including racial discrimination, and denial of procedural due process with facts, before requiring the Defendants to defend against them.

The Court will also dismiss all claims based on denial of substantitive due process for these same reasons.  Although this dismissal will be without prejudice, Supreme Court precedents have shown distinct disfavor of allowing substantitive claims of due process to proceed when alternative constitutional grounds can achieve the same results.  See, e.g. County of Sacramento v. Lewis, 523 U.S. 833, 842 (1998) (explaining that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of governmental behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." (quoting Albright v. Oliver, 510 U.S. 266, 273 (1994) (plurality) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)))).

The Court will allow Plaintiffs ninety (90) days to file the Second Amended Complaint, because of the expedited schedule on the statutory claims, which are scheduled for trial in May 2012.  Present counsel should also consider, given the breadth of their federal constitutional claims, whether they should augment their resources or add additional attorneys to do the appropriate research and drafting.

2.      **Title I of the Elementary and Secondary**
        <u>**Education Act/No Child Left Behind Act**</u>

Plaintiffs have not persuaded the Court that there is a private right of action under Title I

of the Elementary and Secondary Education Act, known in its current form as the No Child Left

Behind Act ("NCLB"). Plaintiffs cite only two cases in support of its position—<u>Wheeler v.</u>

<u>Barrera</u>, 417 U.S. 402 (1975) and <u>Bd. of Educ. of Ottawa Twp. High Sch. Dist. 140 v. Spellings</u>,

517 F.3d 922 (7th Cir. 2008), which are entirely distinguishable from the present case, as

articulated by Defendants. <u>See</u> Defs. Br. at 27.   This Court finds that Plaintiffs' claims under

NCLB are precluded by Supreme Court and Third Circuit precedent finding no private right of

action under the Act.  <u>Newark Parents Ass'n v. Newark Pub. Sch.</u>, 547 F.3d 199, 214 (3d Cir.

2008); <u>Watson v. Wash. Twp. of Gloucester Cnty. Pub. Sch. Dist.</u>, 413 F. App'x 466, 468 (3d

Cir. 2011) (non-precedential); <u>Horne v. Flores</u>, 557 U.S. 433, 129 S. Ct. 2579, 2598 n.6 (2009).

3.      <u>**IDEA and Rehabilitation Act Claims**</u>

The Court finds that the IDEA and Section 504 of the Rehabilitation Act claims are

sufficiently pleaded and should be decided on the expedited schedule previously outlined.  The

one exception is that the Rehabilitation Act claim set forth in Plaintiffs' Count II shall be

permitted to go forward against the Department of Education only, as Section 504 claims cannot

be asserted against individuals.  <u>A.W. v. Jersey City Pub. Schs.</u>, 486 F.3d 791, 804 (3d Cir.

2007); <u>C.G. v. Pennsylvania</u>, No. 06-cv-1523, 2011 WL 318289, at *3 (M.D. Pa. Jan. 28, 2011).

**IV.    <u>Conclusion</u>**

For the foregoing reasons, Defendants' Motion will be DENIED in part.  Defendants'

Motion will also be GRANTED in part, without prejudice to Plaintiffs and Intervenors filing a

Second Amended Complaint within ninety (90) days.

Furthermore, because a trial on many of Plaintiffs' claims is imminent, and in view of the Court's Order of April 6, 2012 regarding a process to ensure the schools in the District remain open through the end of the academic year, Plaintiffs' Motion for a Preliminary Injunction (ECF No. 2) and Plaintiffs' Motion for a Supplemental Temporary Restraining Order (ECF No. 36) will be DENIED as moot.

An appropriate Order follows.[6]

O:\CIVIL 11-12\12-132 Chester v Comm\Chester v Comm Memo Ds Mot Dismiss 4-17-12.wpd

---

[6]     The Court received correspondence from Counsel for the Charter School Parents, dated April 2, 2012, withdrawing their one remaining claim - Count VI.  This claim will therefore be dismissed without prejudice.  The Court also received an unopposed Motion, filed by Plaintiffs, to Dismiss Legal Action Against Defendants Joseph Scarnati and Samuel Smith (ECF No. 126).  This Motion will be granted as unopposed.