IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHESTER UPLAND SCHOOL DISTRICT, et al. | : | CIVIL ACTION |
| v. | : | |
| COMMONWEALTH OF PENNSYLVANIA, et al. | : : | NO. 12-132 |

**MEMORANDUM RE: CLASS CERTIFICATION**

**I.  Introduction**

Plaintiffs and Intervenors[1] filed a Motion for Class Certification (ECF No. 104) pursuant to Rule 23 of the Federal Rules of Civil Procedure. Defendants responded (ECF No. 118). Plaintiffs then filed an Amended Motion for Class Certification (ECF No. 123) and Reply Memorandum (ECF No. 125), with a revised class definition. Defendants filed a "sur-reply" (ECF No. 127) objecting to Plaintiffs' Amended Motion. During a telephone conference held on April 16, 2012, the Court clarified that Plaintiffs' request to amend the class definition would be allowed, and the Court gave Defendants an opportunity to submit additional authorities to support their opposition to the class action motion. Defendants then submitted a letter advising the Court that they would rest on the arguments in their initial briefs (ECF No. 128).

The Court has filed numerous Memoranda and Orders in this case, detailing the facts and the allegations, and the legal issues, and need not repeat them here. As a summary, Plaintiffs seek injunctive and declaratory relief to ensure adequate public funding of the schools of the Chester Upland School District; the Court has initially limited this case to claims asserted under

---

[1]  For simplicity, in this Memorandum only, the Court shall refer to both Plaintiffs and Intervenors (the District Parents and PA-NAACP) as "Plaintiffs" unless otherwise noted.

1

federal statutes pertaining to children with disabilities—specifically, the Individuals with Disabilities Education Act ("IDEA") and Section 504 of the Rehabilitation Act ("Section 504" or "Rehabilitation Act").[2] The parties have, so far, worked out their disputes for the 2011-2012 school year, concluding in June 2012. A non-jury trial is scheduled to begin on May 7, 2012 for these claims as they pertain to the 2012-2013 school year.

Plaintiffs' revised definition of the proposed class reads as follows:

> All parents of students attending or entitled to attend Chester Upland School District, including students obtaining or eligible to obtain services pursuant to the Individuals with Disabilities Education Improvement Act, students with a disability protected by the Rehabilitation Act of 1974 as amended, and students entitled to services pursuant to Title I of the ESA, excluding parents of students attending a charter school.

The three proposed class representatives—T.F., B.C. and M.F.— joined this case as Intervenors, rather than original Plaintiffs; however, their Complaint (ECF No. 13) asserts claims parallel to those in the original Plaintiffs' Amended Complaint. T.C. has a child receiving special education services but B.C. and M.F. do not.

Defendants object to any class being certified and the following is a summary of their reasons:

(1) that the named Plaintiffs have failed to assert any injury and therefore lack standing;

(2) that the required elements of a class action – numerosity, commonality and typicality - are not present;

(3) that the conflicts internal to the putative class remain unresolved; and

---

[2] After Plaintiffs submitted the revised class definition, this Court dismissed Plaintiffs' claims under Title I of the Elementary and Secondary Education Act, also known as the No Child Left Behind Act (ECF No. 132). The Court will therefore exclude any claims under Title I from the revised class definition.

2

(4) that there is no clarity as to which Defendant is being sued for which claims, or the remedies being sought.

The Court has decided to certify a class, although the Court may further modify and limit the class certified under Rule 23(b)(2) as the case progresses.

## II. Standing

As a threshold matter, the Court will address Defendants' argument that class certification must be denied because the named Plaintiffs lack standing. Defendants reiterate their position that Plaintiffs have not alleged an direct and specific injury-in-fact but instead base their claims on the mere potential that the schools in the District will close. Defendants are correct that at least one named Plaintiffs must have Article III standing—and, indeed, satisfy all of the aspects of a justiciable case or controversy—to meet the requirements for class certification. McNair v. Synapse Group Inc., 672 F.3d 213, 222-23 (3d Cir. 2012) (quoting Prado-Steiman ex rel. Prado v. Bush, 221 F.3d 1266, 1279 (11th Cir. 2000) ("It should be obvious that there cannot be adequate typicality between a class and a named representative unless the named representative has individual standing to raise the legal claims of the class.")). The Third Circuit has specified that in a class action for prospective relief, to have standing, a named Plaintiff must demonstrate a "sufficiently real and immediate" threat of future injury. Id. at 223 (citations omitted). This Court, in its April 17th Memorandum (ECF No. 131), reserved decision on all issues related to standing. The Court will therefore certify the class discussed here on the assumption that the named Plaintiffs have standing, but may modify the class if the evidence presented at summary judgment or trial proves otherwise.

3

### III. Analysis Under Federal Rule of Civil Procedure 23(a)

The Court notes at the outset that, in cases similar to that at hand, Judge Kane and Judge Robreno have certified classes. C.G. v. Pennsylvania, No. 06-cv-1523, 2009 WL 3182599 (M.D. Pa. Sept. 29, 2009) (Kane, J.); Gaskin v. Pennsylvania, No. 94-cv-4048, 1995 WL 355346 (E.D. Pa. June 12, 1995) (Robreno, J.). This Court finds their opinions on class certification to be thorough and well-reasoned, and concludes that there is no need for this Court to go into a detailed discussion that duplicates their efforts. The precedent and analysis at the heart of their opinions form the foundation for this Court's decision here.

Plaintiffs must first meet the requirements of Rule 23(a), as follows:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class.

Fed. R. Civ. P. 23(a). In this case there can be little dispute that these requirements have been met.

#### A. Numerosity

There are approximately 3,600 students in the Chester Upland School District, which is clearly too large a number for joinder. Am. Compl. ¶ 18. Indeed, classes greater than 40 generally satisfy the numerosity requirement. C.G., 2009 WL 3182599 at *5 (citing Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001)). As few as 25 individuals may even meet the requirement. Gaskin, 1995 WL 355346 at *2 (quoting Philadelphia Elec. Co. v. Anaconda Am. Brass Co., 43 F.R.D. 452, 463 (E.D. Pa. 1968)).

As the Court describes below, it will certify a sub-class of parents of students with

4

disabilities who are eligible for services under the IDEA or Section 504. This sub-class is also sufficiently numerous to warrant class treatment; roughly twenty percent of the students in the district—which comes to more than 700 students—have a disability (Am. Compl. ¶ 17) and the Court assumes that many, if not all, are therefore eligible for or already receiving services under the IDEA and/or Section 504.

Defendants argue that the class is not sufficiently numerous because the named Plaintiffs allege no injury. This argument is properly considered with respect to the named Plaintiffs' standing to sue, as discussed above, but does not affect the numerosity analysis.

### B. Commonality and Typicality

"The concepts of commonality and typicality are broadly defined and tend to merge." Baby Neal for and by Kanter v. Casey, 43 F.3d 48, 56 (3d Cir. 1994). While "[b]oth criteria seek to assure that the action can be practically and efficiently maintained and that the interests of the absentees will be fairly and adequately represented," they are in fact distinct prerequisites to class certification. Id. (citing General Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 157 n.13 (1982); Hassine v. Jeffes, 846 F.2d 169, 177 n.4 (3d Cir. 1988)). "'[C]ommonality' like 'numerosity' evaluates the sufficiency of the class itself, and 'typicality' like 'adequacy of representation' evaluates the sufficiency of the named plaintiff." Hassine, 846 F.2d at 177 n.4.

Neither commonality nor typicality mandates that the putative class members' claims be identical. Id. at 177. Rather, for commonality purposes, "the named plaintiffs [must] share at least one question of fact or law with the grievances of the prospective class." Baby Neal, 43 F.3d at 56 (citing In re "Agent Orange" Prod. Liab. Lit., 818 F.2d 145, 166-67 (2d Cir. 1987)). "Typicality entails an inquiry whether 'the named plaintiff's individual circumstances are

5

markedly different or ... the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based.'" Hassine, 846 F.2d at 177 (quoting Weiss v. York Hosp., 745 F.2d 786, 809 n. 36 (3d Cir. 1984)).

Prior Memoranda and Orders in this case show that there are common questions of law and fact for the entire class, such as whether the allegedly imminent school closures, or reduction in funding, in the District will cause students with disabilities to be denied the free and appropriate education ("FAPE"), and other special education services required by federal law, and other similar questions.

The claims and defenses of the representative parties are typical of the claims or defenses of the entire class; indeed there do not seem to be any unusual claims or facts pertaining to any of the representative parties still seeking to represent the class.[3]

Defendants also contest class certification on the grounds that the IDEA claims at issue require individualized fact-finding inappropriate for class treatment. The Court, however, agrees with Plaintiffs "that just because special education involves individualized educational plans it does not preclude certification of a class when the allegations are directed to practices which result to injury in the entire class." Pl. Reply Memorandum at 7. Plaintiffs ask the Court to evaluate the legality of the state special education funding formula, and other funding decisions,

---

[3] Three of the named class representatives in the initial Motion for Class Certification no longer seek to represent the class. Two of these Plaintiffs, E.W. (an original Plaintiff) and K.H. (an Intervenor), have been dropped as party Plaintiffs/Intervenors in the case. A third Plaintiff, Delores Sharp, who is a parent of a regular education student in the District, continues as a party Plaintiff but does not seek to be a class representative. As noted in a recent recorded telephone conference with counsel, three District Parents, including T.F., who is the parent of a child receiving special education services, continue as class representatives. The Court fails to see how any of these events have prejudiced Defendants.

6

as they relate to Plaintiffs' rights under the IDEA and Section 504. Unlike McClendon v. School District of Philadelphia, No. 04-1250, 2005 WL 549532, in which Judge Sanchez declined to certify a class, Plaintiffs here are not seeking individualized determinations such as whether the District provided the exact services delineated under each child's IEP. Id. at *4. This case is also distinguishable from McClendon because the plaintiffs there sought compensatory relief in addition to declaratory and injunctive relief, leading Judge Sanchez to conclude that "[c]ertification of a class would compromise the individual plaintiff's [sic.] freedom to resolve their individual cases." Id. In contrast, here, as in C.G. and Gaskin, in which classes were certified, this Court need not look to each child's IEP, if any, to make the requested legal determinations and grant relief that would benefit all class members. Even the claims which allege an imminent denial of FAPE and other rights under the IDEA do not necessitate individualized fact-finding because they revolve around one scenario—imminent closure of all District schools in their entirety or reduction in funding—which Plaintiffs allege would result in a complete denial of all special education rights to eligible students. Consequently this Court need only evaluate whether the allegations regarding the funding decisions and imminent school closure are proved in order to make a determination relevant to all putative class members.

### C. Adequacy of Representation

The adequate representation prong requires a showing that "(a) the plaintiff's attorney [] be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff [] not have interests antagonistic to those of the class." C.G., 2009 WL 3182599 at *7 (quoting New Directions Treatment Servs. v. City of Reading, 490 F.3d 293, 313 (3d Cir,. 2007)). Attorneys Michael Churchill and Sonja Kerr of the Public Interest Law Center of

Philadelphia ("PILCOP"), which has represented many classes in this court, seek to be appointed to represent the class. These attorneys have been involved in this suit almost from its inception, having represented the District Parents who intervened just days after the original Plaintiffs filed their Complaint. They have demonstrated skill and dedication to the case as well as an expertise in education laws.

The Court notes that the District Parent Intervenors have sued the District and its Board in addition to certain Commonwealth Defendants. Unlike Leo Hackett, counsel for the original Plaintiffs in the case, which includes certain parents as well as the District and its Board, the PILCOP attorneys do not represent any of the School District Defendants. The Court finds that they do not have a conflict in this respect and will therefore zealously represent the interests of the class members against all Defendants.

The Court also finds that the representative parties will fairly and adequately protect the interest of the class. The overall interest of the class is relatively straightforward—revise the various funding schemes and allocations in order to keep the District schools open, and also, adequately funded, so that the class members may receive the educational services to which they are entitled. No facts have been brought forward showing that the representative parties themselves are in any way inadequate. Defendants originally argued that there was a conflict between the named Plaintiffs and the class because the class included parents of students attending charter schools. Counsel subsequently revised the class definition to expressly exclude parents of students attending charter schools and this Court has repeatedly made clear that it will not be adjudicating the ongoing funding dispute between the District and charter schools which is the subject of multiple current state court lawsuits. The Court concludes that named class

representatives therefore have no conflict with the other members of the putative class and will adequately represent absentee class members.

In light of the above, the Court finds that all the requirements of Rule 23(a) have been met.

### III. Analysis Under Federal Rule of Civil Procedure 23(b)(2)

Despite meeting the requirements of Rule 23(a), a class action will only proceed if Plaintiffs satisfy one of the prongs of Rule 23(b). Baby Neal, 43 F.3d at 58. Under 23(b)(2), upon which Plaintiffs rely, Plaintiffs must demonstrate that Defendants "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) is properly utilized to "remedy[] systemic violations of basic rights of large and often amorphous classes." Baby Neal, 43 F.3d at 64. The Third Circuit has explained that the requirements of Rule 23(b)(2) are easy to meet in cases involving systemic reform: its requirements are "almost automatically satisfied in actions primarily seeking injunctive relief." Id. at 58 (citing Weiss, 745 F.2d at 811). Courts must ensure "that the relief sought by the named plaintiffs should benefits the entire class" and that there will be no prejudice to absentee class members if the named plaintiffs' interests differ from their own. Id.

As this Court noted in its April 17th Memorandum, Plaintiffs seek widespread relief for imminent violations of federal law, arising out of "system-level funding problems including a special education funding scheme which allegedly violates the IDEA and the Constitution and Defendants' alleged misuse of federal IDEA dollars." Memorandum Re: Defendants' Motion to Dismiss the Amended Complaint (ECF No. 131) at 10; see also Memorandum Re: Subject

Matter Jurisdiction (ECF No. 90) at 28. Based on the Amended Complaint and Intervenor Complaints, the relief requested would increase overall revenue to the District to ensure services continue to be provided in accordance with the IDEA and Section 504. There can be no doubt that all members of the proposed class whose children are eligible for such services would therefore benefit from class certification under 23(b)(2). Moreover, the benefits from an increase in revenue for these services would spill over to the students in the general education program. The District would have more funding overall to meet its many needs, which would benefit all students in the District. In addition, funding specifically for special education services and services under Section 504 would benefit students ineligible for those services who, for example, would have the opportunity to interact with students with disabilities within their mainstream classroom and/or receive small-group instruction from an aid present in the class as required under another student's Individual Education Plan ("IEP"). The Court concludes that the whole class would benefit from the relief sought by the named plaintiffs, and there is no risk of prejudice to absentees due to a divergence of interests between the class representatives and the rest of the class members. Like Judge Kane in C.G., this Court "easily concludes that this action is within the type Rule 23(b)(2) was designed to authorize." See C.G., 2009 WL 3182599 at *8.

## IV.    Conclusion

For the reasons discussed above, the Court will certify a class, represented by T.F., B.C. and M.F., as follows:

> All parents of students attending Chester Upland School District, including students obtaining or eligible to obtain services pursuant to the Individuals with Disabilities Education Act as amended, and students with a disability protected by the Rehabilitation Act of 1974 as amended, excluding parents of students attending a charter school.

In addition, for purposes of prospective case management, and recognizing that standing and relief may differ between them, the Court will certify two separate sub-classes. See Gaskin, 1995 WL 355346 at *5 ("The Court's power to divide a class into suitable subclasses pursuant to Rule 23(c)(4)(B), may be exercised at any time during the litigation."). The first, represented by T.F. only, will be made up of all parents of students who attend Chester Upland School District who are obtaining or are eligible to obtain services under the IDEA and/or have a disability protected by the Rehabilitation Act.[4] The second, represented by B.C. and M.F., will be made up of parents who do not have any children who are eligible for services under the IDEA or Rehabilitation Act.

As mentioned above, the Court may further modify the class and sub-class definitions as the proofs and arguments at the summary judgment and trial stages dictate.

An appropriate Order follows.

O:\CIVIL 11-12\12-132 Chester v Comm\Chester v Comm Memo Re Class Cert.wpd

---

[4] As explained in footnote 29 of this Court's March 17, 2012 Memorandum Re: Subject Matter Jurisdiction, the Court is aware that the Rehabilitation Act provides relief to a broader group of individuals than the IDEA does. If this difference becomes relevant in the current case, the Court will consider whether or not to further refine the sub-class.

11