IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHESTER UPLAND SCHOOL DISTRICT, et al.   :   CIVIL ACTION

v.   :

COMMONWEALTH OF PENNSYLVANIA,   :   NO. 12-132
et al.

## QUESTIONS FOR COUNSEL

1. Does a local school district have an obligation to prioritize funding special education, as may be necessary to provide a free and appropriate public education ("FAPE")?

2. Does a school district have any minimum standards to apply in providing a FAPE?

   a. If so, what are those standards and where can they be found in writing?

   b. Is there any statute or regulation, state or federal, which provides such a standard?

   c. What Third Circuit precedential opinions provide standards for evaluating whether a FAPE has been provided?

3. When a school district is not providing a FAPE to some students due to lack of funds, does it have an obligation to terminate discretionary programs so that it provides the FAPE? Is this required by federal law? Should a school district terminate those programs even if such cuts would ultimately cost that district money – i.e. because students would leave the district schools for charter schools?

4. What other mandatory programs or priorities, if any, besides special education, are required under either federal or state law?

5. Does the record show what extracurricular activities are still being provided by Chester Upland? Are any of these mandated by federal or state law? Before this Court grants any relief to the Plaintiffs, does Chester Upland School District have a burden of showing that it has terminated all extracurricular programs, but still does not have funds to meet accepted standards for mandatory programs or basic education subjects (English, math)?

    a. It appears that certain concepts, such as class size and teacher salary, are not mandated and are subject to change by a local district. Should a federal court intervene and order relief when a local school board has the power to increase class size or decrease the number of teachers, e.g., and to provide extra money to special education through these means?

6. Do federal or state regulations provide any kind of framework to determine whether the special education services provided by an individual school, an entire school district, or an entire state are inadequate?

7. To what extent is Defendants' position correct, that a school district is expected to use all revenues, including local tax revenues as well as other funds provided by the state, to provide special education services? Are there any regulations on this point?

8. What effect does the Pennsylvania method of distributing the 15% federal poverty supplement have on Chester Upland? Is this improper under federal or state law? Is it discriminatory under federal or state law? If so, what is the remedy? Have Plaintiffs alleged a claim that this particular funding structure violates the law?

9. What evidence is in the record showing that the Chester Upland School District has already made so many cuts in regular education or discretionary programs that it is not offering FAPE to many students?

      a.      Have Plaintiffs demonstrated that any denial of FAPE is due to forces beyond their control, as opposed to the District's unwillingness to make even more "hard choices?"

      b.      What does the record allow the Court to find in regards to FAPE in the least restrictive environment ("LRE") for the 2012-13 school year? What evidence exists in the record to suggest that students are currently not receiving a FAPE in the LRE will be unlikely to receive a FAPE in the LRE for the 2012-13 school year?

      c.      Do these questions correctly describe Plaintiffs' burden of proof? If not, what is Plaintiffs' burden? If the Court finds that Plaintiffs' burden, however described, is not met, what is Plaintiffs' position?

**Remedies**

10.      Have Plaintiffs proven enough facts to come under the Third Circuit's holding in <u>Beth V. ex rel. Yvonne V. v. Carroll</u>, 87 F.3d 80, 89 (3d Cir. 1996) that plaintiffs who "allege systemic legal deficiencies and, correspondingly, request system-wide relief" are excused from the IDEA's exhaustion requirement, as well as Judge Robreno's opinion in <u>Gaskin v. Pennsylvania</u>, No. 94-cv-4048, 1995 WL 154801 (E.D. Pa. March 30, 1995) and Judge Davis's decision in <u>P.V. ex rel. Valentin v. Sch. Dist. of Philadelphia</u>, No. 11-cv-4027, 2011 WL 5127850 (E.D. Pa. Oct. 31, 2011) regarding exceptions to the IDEA exhaustion requirement? If yes, what is the proper remedy?

11.      In enacting the IDEA, did Congress envision that as to a student who was entitled to special education services, but was not receiving them, that the sole remedy is to institute a "due process" claim or other administrative claim, and if denied, to pursue the claim in federal

district court? Does the statute require individual actions because the Individual Education Plan ("IEP") has to be individualized and tailored to the specific student?

12. As part of any remedy in this case, should this Court institute any procedures to facilitate the filing of complaints or due process claims under IDEA? Is there any evidence in the record as to how many such actions have been filed in recent years by parents of Chester Upland? If none, why not?

13. Can the evidence be fairly construed to establish that Chester Upland is undergoing a cost squeeze, i.e., revenues are decreasing largely because of students shifting to charter schools, there is no opportunity to raise taxes yet expenses, both fixed and variable, are much higher than revenue, and special education services have been cut? Is the state ultimately responsible for this since the legislature dictated the charter school scheme? Or, is this purely the School District's problem to fix?

14. The evidence shows IEPs are not in compliance. Is there sufficient evidence to show FAPE lacking for many? Even if not a fault of the state, does the Court have responsibility under federal law to remedy this? Is this the basis of PILCOP's claims against Chester Upland School District?

                                                                   ORDERED FILED

5/30/12                                                                   s/Michael M. Baylson, U.S.D.J.

O:\CIVIL 11-12\12-132 Chester v Comm\Questions for Counsel 5-29-12.wpd