THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHESTER UPLAND SCHOOL ) <br> DISTRICT, et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> COMMONWEALTH OF ) <br> PENNSYLVANIA, et al., ) <br> ) <br> Defendants. ) <br> ) | Civil Action No. 12-cv-0132 <br> (Baylson, J.) |

STATEMENT OF INTEREST OF THE UNITED STATES
ON PROPOSED CLASS ACTION SETTLEMENT AGREEMENT

Pursuant to 28 U.S.C. § 517,[1] the United States respectfully submits these comments on the proposed class action Settlement Agreement ("Agreement") submitted by the parties. The Agreement implicates the respective roles of a state educational agency ("SEA") and local educational agency ("LEA") in guaranteeing students with disabilities the essential educational services they are entitled to under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400, *et seq.* and Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794.

The IDEA protects the civil rights of children with disabilities by providing federal funding to states for special education and related services. Congress has charged the United

---

[1] Under 28 U.S.C. § 517, "[t]he Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States."

States Department of Education ("ED") with the administration of the IDEA and authorized ED to promulgate implementing regulations. *See* 20 U.S.C. §§ 1406(a), 1417. Among its responsibilities, ED is required to make annual determinations regarding each State's performance under the IDEA, "[b]ased on the information provided by the State in the State [annual] performance report, information obtained through monitoring visits, and any other public information made available." 20 U.S.C. § 1416(d)(2). As part of its review of Pennsylvania's performance, ED has monitored the progress of this case. *See* Letter from Melody Musgrove, Director, Office of Special Education Programs, to John Tommasini, Director of Special Education, Pennsylvania Department of Education (July 24, 2012);[2] Letter from Melody Musgrove, Director, Office of Special Education Programs, to Ronald J. Tomalis, Secretary of Education, Pennsylvania Department of Education (June 27, 2012).[3] The Department of Justice may bring actions to enforce the IDEA upon referral from ED. *See* 20 U.S.C. §§ 1416(e)(2)(B)(vi), 1416(e)(3)(D).

Section 504 prohibits discrimination against qualified individuals with disabilities by recipients of federal financial assistance, including SEAs and LEAs. "Section 504 of the Rehabilitation Act is parallel to the IDEA in its protection of disabled students: it protects the rights of disabled children by prohibiting discrimination against students on the basis of disability, and it has child find, evaluation, and FAPE [free and appropriate public education] requirements, like the IDEA." *Michael P. v. West Chester Area School Dist.*, 585 F.3d 727, 735 (3d Cir. 2009) (bracketed material added). Congress intended the federal agencies distributing

---

[2] A copy of this letter is attached hereto as Exhibit A.
[3] A copy of this letter is attached hereto as Exhibit B and is also available at http://www2.ed.gov/fund/data/report/idea/partbspap/2012/pa-aprltr-2012b.pdf (accessed August 10, 2012).

federal financial assistance, including ED and the Department of Justice, to issue regulations to enforce Section 504. *See Consolidated Rail Corp. v. Darrone,* 465 U.S. 624, 634 (1984). ED issued regulations to implement Section 504 in 34 C.F.R. Part 104. In accordance with these regulations, to enforce Section 504, ED may terminate federal funds upon finding noncompliance or refer the matter to the Department of Justice to bring a civil action. 29 U.S.C. § 794(b); 34 C.F.R. 104.61 (2011) (incorporating 34 C.F.R. 100.8(a)(1)).

The United States, therefore, has a strong interest in the correct interpretation and application of the IDEA, Section 504 and their regulations in this matter.[4]

The Court has found that a number of students in the Chester Upland School District ("District") are not receiving a "free and appropriate public education" (FAPE) as required by the IDEA. *See* Transcript of Record at 206, *Chester Upland Sch. Dist. v. Pennsylvania*, No. 12-CV-132 (E.D. Pa. May 29, 2012) ("May 29 Transcript"). The Court further observed that consistent, credible testimony from multiple witnesses demonstrated that in 2011-2012, special education services were not provided to students with disabilities in the District, and IDEA-eligible students did not receive progress reports or timely individualized education programs ("IEPs") as the statute requires. *Id.* at 201.

As explained below, under the IDEA, a presumptive remedy for a denial of FAPE is compensatory education services designed to restore the student to the position he/she would have occupied but for the statutory violations. *See infra* at pp. 8-12. Because the Agreement fails to acknowledge and address a process for determining the need for compensatory education

---

[4] With regard to children with disabilities, the United States enforces the IDEA, Section 504 of the Rehabilitation Act of 1973, and Title II of the Americans with Disabilities Act. The pertinent claims in the complaints allege violations of the IDEA and Section 504, and therefore this statement addresses those statutes.

3

services for any child who was denied FAPE under the IDEA and/or Section 504, it is incomplete and inconsistent with the State's underlying duty to formulate appropriate remedies for violations of the IDEA and to ensure that LEAs implement those remedies. Likewise, the Agreement's failure to address the compensatory education services and other relief individual children who have been subjected to past discrimination would be entitled to under Section 504 makes the Agreement incomplete and inconsistent with federal law. While there may be many ways to address the appropriate remedies for such statutory violations, the Agreement should delineate a process for furnishing this relief as appropriate, particularly given the ambiguous and potentially expansive release of claims in the Agreement.

The Agreement is also incomplete and inconsistent with federal law because it does not expressly provide for sufficient notice to class members; specifically, the steps they can take to address past and future statutory violations in light of the Agreement. This silence undermines IDEA and Section 504's goal of parental participation and involvement, which is reflected in multiple provisions requiring written notice to parents regarding their rights and the procedural steps they can follow to enforce those rights.

## BACKGROUND

On January 12, 2012, the District filed the above-captioned lawsuit against the Pennsylvania Department of Education and state officials ("Defendants"). (Doc. 1). The District's first amended complaint alleges, *inter alia*, that Defendants failed to provide sufficient funds to allow the District to operate its special education programs in compliance with federal and state law. (Doc. 67 at ¶ 13). The District further alleges that as a consequence of receiving inadequate financial support from the State, educational programming for students with

disabilities was adversely impacted in 2011-2012, *id.* at ¶ 25; and the District was in "imminent danger" of having to discontinue educational services to both regular and special education students, *id.* at ¶ 40.

On January 20, 2012, the Public Interest Law Center of Philadelphia ("PILCOP") intervened in the lawsuit on behalf of a putative class of parents with students attending schools in the District. (Doc. 39). The Pennsylvania Statewide Conference of the NAACP subsequently intervened on behalf of its own membership. (Doc. 87). In an order issued May 8, 2012, the Court certified the following class of plaintiffs:

> All parents of students who attend Chester Upland School District who are obtaining or are eligible to obtain services under the IDEA and/or are protected by the Rehabilitation Act, (including rights to child find evaluations and other services), excluding parents of students attending a charter school.

(Doc. 155 at 2).

The Court conducted a ten-day trial in which it found, among other things, that there was a failure to provide FAPE to class members during the 2011-2012 school year. May 29 Transcript at 201, 206. In addition, the trial explicitly addressed the District's capacity to provide regular and special education services during the 2012-2013 academic year. The parties later negotiated the proposed Agreement that the Court provisionally approved on July 27, 2012. (Doc. 242). The Court scheduled an August 15, 2012 hearing to determine if the Agreement is "fair, reasonable and adequate" as required by Rule 23(e) of the Federal Rules of Civil Procedure. *Id.*

## ARGUMENT

### 1. Applicable Legal Standard

"Before approving a class settlement agreement, a district court must find that the requirements for class certification under Rule 23(a) and (b) are met, and must separately determine that the settlement is fair to the class under Rule 23(e)". *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 319 (3d Cir. 2011) (quoting *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 257 (3d Cir. 2009) (internal quotation marks omitted). In determining whether a proposed class settlement merits the court's approval, "trial judges bear the important responsibility of protecting absent class members . . . by . . . assuring that the settlement represents adequate compensation for the release of the class claims." *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 349 (3d Cir. 2010) (citation omitted) (internal quotation marks omitted); *see also Ehrheart v. Verizon Wireless*, 609 F.3d 590, 593 (3d Cir. 2010) (citations omitted) (emphasizing that "[t]he purpose of Rule 23(e) is to protect the unnamed members of the class," and that a "district court acts as a fiduciary" for absent class members). The court's determination that a settlement is fair, reasonable, and adequate is reviewed for abuse of discretion. *In re Cendant Corp. Litig.*, 264 F.3d 201, 231 (3d Cir. 2001).

The Third Circuit has directed district courts to evaluate nine factors as part of the fairness inquiry required by Rule 23(e): (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the

defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Pet Food*, 629 F.3d at 350 (quoting *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir.1975)) (internal quotation marks and alterations omitted). The court may, in its discretion, consider other factors "illustrative of additional inquiries that in many instances will be useful for a thoroughgoing analysis of a settlement's terms," including a "comparison between the results achieved by the settlement for individual class or subclass members and the results achieved – or likely to be achieved – for other claimants; . . . and whether the procedure for processing individual claims under the settlement is fair and reasonable," *id.* (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 323 (3d Cir. 1998)) (internal quotation marks omitted). The settling parties bear the burden to prove that a consideration of these factors weighs in favor of approving the settlement. *Id.*

We note that in this case, where the trial has been completed, and the proposed settlement precedes a final decision, the relevant *Girsh* factors are (2) the reaction of the class to settlement; (4) the risks of establishing liability; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

As a recipient of federal funding for special education through the IDEA, Pennsylvania is bound by the requirements of the IDEA and Section 504. The Agreement should reflect its undisputed role as the SEA in ensuring not only that the statutory obligations of the IDEA and

Section 504 are properly carried out in the District going forward, but also (1) that past violations are redressed; and (2) that parents have clear notice of their rights, and the procedures available to remedy past violations of those rights and to raise current and future concerns.

2. **The Proposed Agreement Must Address the Denial of FAPE in the 2011-2012 School Year by Providing for Compensatory Education and Other Proper Redress.**

The United States objects to the absence of any express provisions in the Agreement addressing the need for compensatory education services for individual members of the class of children with disabilities who may require such services to redress the denial of FAPE, because this omission makes the Agreement inconsistent with the IDEA and Section 504. Declining to approve the Agreement until it includes a process for determining the need for compensatory education services and other redress for class members injured by past statutory violations (or at least an express acknowledgement of all existing processes available for resolving such individual claims) would be consistent with both the Court's authority to require appropriate relief, as well as the State's pre-existing and continuing federal obligation to ensure that FAPE is available to all children with disabilities residing in the State. This obligation requires the State to specifically ensure (1) that an IEP or a plan under Section 504 that provides each eligible student with the special education and related services he/she needs to obtain FAPE is formulated and implemented, and (2) that denials of FAPE are properly redressed, and appropriate decisions about the provision of compensatory education services are made in a timely fashion. 20 U.S.C. §§ 1412(a)(1) and (11), 1414 and 1415; 34 C.F.R. §§104.33, 104.36 (2011).

Where, as here, a court finds a denial of FAPE, the IDEA authorizes the court to "grant such relief as the court determines is appropriate." 20 U.S.C. 1415(i)(2)(C)(iii). This provision of the IDEA "gives courts broad [remedial] authority." *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 239 (2009); *see also Beth V. v. Carroll*, 87 F.3d 80, 89 (3d Cir. 1996) (ruling that putative class plaintiffs alleging systemic IDEA violations could be entitled to class-wide relief through a waiver of the IDEA's exhaustion requirements). "A plaintiff who alleges the denial of a FAPE may seek compensatory relief in the form of appropriate educational services within the district (referred to as 'compensatory education')." *Mary T. v. Sch. Dist. of Phila.*, 575 F.3d 235, 249 (3d Cir.2009)).

In the view of the Third Circuit, "compensatory education serves to 'replace educational services the child should have received in the first place' and . . . such awards 'should aim to place disabled children in the same position they would have occupied but for the school district's violations of IDEA.'" *Ferren C. v. Sch. Dist. of Philadelphia*, 612 F.3d 712, 718 (3d Cir. 2010) (quoting *Reid v. District of Columbia*, 401 F.3d 516, 518 (D.C. Cir. 2005)) (alteration omitted). In *M.C. v. Cent. Reg'l Sch. Dist.*, 81 F.3d 389 (3d Cir.), *cert. denied*, 519 U.S. 866 (1996), the Third Circuit held that compensatory education is an appropriate remedy for a denial of FAPE. The school district in *M.C.* provided a student with a disability an IEP that gave the student only a "trivial" educational benefit – not the "meaningful" educational benefit the IDEA requires. *Id.* at 393-94. The *M.C.* Court explained that "a school district that knows or should know that a child has an inappropriate IEP . . . must correct the situation." *Id.* at 397. The student was, therefore, "entitled to compensatory education for a period equal to the period of deprivation [of FAPE], but excluding the time reasonably required for the school district to

9

rectify the problem." *Id.*[5] Other courts of appeals have also held that compensatory education is an appropriate remedy when a student with a disability has been denied FAPE.[6]

Section 504 has likewise been interpreted to authorize compensatory education awards. A court's remedial authority under Section 504 is governed by "the traditional presumption in favor of *any appropriate relief* for violation of a federal right." *Barnes v. Gorman*, 536 U.S. 181, 185 (2002) (quoting *Franklin v. Gwinnett County Pub. Schs.*, 503 U.S. 60, 73 (1992) (emphasis in original)). While certain remedies, such as punitive damages, are inappropriate under Section 504, *see id.*, compensatory education is an appropriate remedy under Section 504 for the same reason it is appropriate under the IDEA. *See Mrs. C. v. Wheaton*, 916 F.2d 69, 75-76 (2d Cir. 1990) ("Since § 504 expressly allows for equitable relief, 42 U.S.C. § 2000d-7(a)(2), compensatory education is an appropriate remedy when § 504 is used to enforce [IDEA] rights."); *Bristol Township School District*, No. 9931/08-09 KE, 109 LRP 56531 (Pa. SEA Aug.

---

[5] ED's long-standing interpretation of the IDEA supports the provision of compensatory education, which may take the form of services provided outside of normal school hours or during the summer. *Letter to Kohn*, 17 IDELR 522 (Feb. 13, 1991) ("a hearing officer ... may order, as a means of redressing the denial of FAPE to that child, that compensatory education include or take the form of summer school programming.") (attached hereto as Exhibit C). *Accord M.C.*, 81 F.3d at 395 n.3 (noting that "[a]t least one federal court and numerous administrative law judges have upheld or awarded compensatory education during the summer months rather than after age twenty-one") (citation omitted).

[6] *See, e.g., Mrs. P. v. Newington Bd. of Ed.*, 546 F.3d 111, 123 (2d Cir. 2008) ("[W]e have held compensatory education is an available option under the Act to make up for denial of a free and appropriate public education."); *Draper v. Atlanta Indep. Sch. Sys.*, 518 F.3d 1275, 1280 (11th Cir. 2008) ("This Circuit has held compensatory education appropriate relief where responsible authorities have failed to provide a handicapped student with an appropriate education as required by [the Act]."); *L.I. v. Maine Sch. Admin. Dist. No. 55*, 480 F.3d 1, 25 (1st Cir. 2007) ("We have recognized that, as another form of 'appropriate relief' available under § 1415(i)(2)(C)(iii), a court may require compensatory education in the form of further services, in compensation for past deprivations of IDEA benefits.") (citation omitted) (internal quotation marks omitted); *Park v. Anaheim Union High School Dist.*, 464 F.3d 1025, 1033 (9th Cir. 2006) ("Compensatory education services can be awarded as appropriate equitable relief [for a denial of a FAPE]."); *Reid v. District of Columbia*, 401 F.3d 516, 518 (D.C. Cir. 2005) ("When a school district deprives a disabled child of [a FAPE] in violation of [the IDEA], a court fashioning 'appropriate' relief [under 20 U.S.C. § 1415(i)(2)(C)(iii)], may order compensatory education, *i.e.*, replacement of educational services the child should have received in the first place."); *Ssgt RG v. Fort Bragg Dependent Sch.*, 324 F.3d 240, 253-54 (4th Cir. 2003) ("We agree with every circuit to have addressed the question that the IDEA permits an award of [compensatory education] in some circumstances.") (citing cases).

10

11, 2009) (awarding compensatory education for child eligible for FAPE under Section 504 but not IDEA) (attached hereto as Exhibit D).[7]

The authority to order compensatory education services to students denied FAPE is not reposed exclusively in courts, but can be exercised by the SEA consistent with its statutory enforcement responsibilities. *See Letter to Murray*, 19 IDELR 496 (Sept. 25, 1992) (advising that as part of the State's complaint resolution procedures "an SEA has the authority to require compensatory education ... [for] a child with disabilities who [was] denied FAPE.") (attached hereto as Exhibit J); *Letter to Anonymous*, 21 IDELR 1061 (August 29, 1994) (advising that both a State educational agency and a hearing officer have the authority to require compensatory education) (attached hereto as Exhibit K); *cf. Forest Grove*, 557 U.S. at 243 n.11 (Congress intended hearing officers, as well as courts, to have authority under the IDEA to award appropriate relief). ED has addressed the SEA's and LEA's responsibilities regarding compensatory education services in various contexts.[8] Most importantly, as currently required

---

[7] Where appropriate, ED's Office for Civil Rights (OCR) routinely includes compensatory education provisions in its resolution agreements for both individual and class complaints. *See, e.g., Resolution Agreement: Chicago Pub. Schs. Dist #299*, 110 LRP 58688 (OCR, Sept. 30, 2010), available at http://www2.ed.gov/about/offices/list/ocr/docs/investigations/05105001.html (accessed August 10, 2012) (attached hereto as Exhibit E); *Temecula Valley (CA) Unified School District*, 112 LRP 37631 (OCR, May 25, 2012); *Tahquamenon (MI) Area Schools*, 111 LRP 47667 (OCR, March 18, 2011) (attached hereto as Exhibit F); *Santa Monica-Malibu (CA) Unified School District*, 57 IDELR 52, 111 LRP 47653 (OCR, Mar. 18, 2011) (attached hereto as Exhibit G); *Kansas City (MO) #33 School District*, 47 IDELR 233, 106 LRP 60797 (OCR, Aug. 15, 2006) (attached hereto as Exhibit H); *Chicago (IL) Board of Education*, 257 IDELR 568, 257 LRP 8088 (OCR, July 9, 1984) (attached hereto as Exhibit I).

[8] *ABC Alt. Learning Ctr. d/b/a Central City Academy*, 38 IDELR 41 (June 27, 2002) (affirming the State's partial withholding of funding to a charter school that refused to pay for required compensatory education services) (attached hereto as Exhibit L); *Letter to Ban*, 45 IDELR 17 (Sept. 26, 2005) (acknowledging the State's determination that FAPE was made available to children with disabilities attending certain public charter schools and that compensatory services were therefore not required) (attached hereto as Exhibit M); *Questions and Answers on Providing Services to Children with Disabilities During an H1N1 Outbreak*, 53 IDELR 269 (Dec. 1, 2009), available at www.ed.gov/policy/speced/guid/idea/h1n1-idea-qa.pdf (accessed August 7, 2012) (directing that where a child with a disability does not receive services during a school closure due to an influenza pandemic, the child's IEP team (or appropriate personnel under Section 504) must make a subsequent individualized determination of

under the IDEA's implementing regulation, where the SEA investigates and verifies a parent's complaint that their child was denied FAPE, the remedy must address corrective actions appropriate to the child's needs, including the need for compensatory education services. 34 C.F.R. 300.151(b)(1) (2011).

Because the Agreement in this case wholly fails to address the need for compensatory education services for members of the class of children with disabilities, it does not provide sufficient relief and should be augmented. Including in the Agreement a provision to address compensatory education services and other appropriate remedies would bring the Agreement into compliance with the State's pre-existing obligation to consider the need for compensatory education services when formulating an appropriate individualized remedy for each denial of FAPE.

### 3. Parents of Eligible Students Must Be Provided the Notice of Their Individual Rights Consistent with the IDEA, Section 504, and the Agreement Itself

The United States also objects to the absence of express provisions in the Agreement addressing any process to ensure that class members are timely and adequately notified of any limitations on existing rights or procedures, or additional rights or procedures that may be available under the terms of the Agreement, because this omission makes the Agreement inconsistent with the IDEA and Section 504. Since the Agreement contains a provision precluding any individual waiver of rights "arising in the course of District's provision of special education programs," and provides for dismissal of this case with prejudice, the Court should

---

whether the child requires compensatory education.") (attached hereto as Exhibit N); *Letter to Davis-Wellington*, 40 IDELR 182 (Aug. 19, 2003) (advising that a denial of FAPE due to the failure to provide supplementary aids and services, as well as supports to allow involvement and progress in the general curriculum, may require the provision of appropriate compensatory services.) (attached hereto as Exhibit O).

decline to approve the Agreement until it contains a provision requiring class members to be notified of how the Agreement will affect, if at all, the individual rights of parents or students with disabilities seeking redress for violations of the IDEA or Section 504 (especially for alleged violations that occurred during the 2011-2012 school year).

Notice and participation are central requirements of the IDEA and Section 504, and failing to provide adequate notice deprives parents of the ability to protect their children's interests and the opportunity to participate in the decisions that impact their children's education.[9] Here, proper notice of the individual rights, remedies and procedures of the IDEA and Section 504, as well as the impact of the Agreement, if any, on those rights, remedies and procedures, would put parents in an appropriate position to obtain the relief to which they would be lawfully entitled. The notice should explain the role, if any, the Special Education Officer under the Agreement would have in ensuring that compensatory services are provided and the process by which parents of children with disabilities who are members of the class could provide notice to the Special Education Officer of specific concerns regarding their child.

---

[9] A copy of the procedural safeguards available under the IDEA must be given to the parents once each school year, and additionally provided to parents under other specific circumstances, including a request by a parent. 20 U.S.C. § 1415(d)(1) and 34 C.F.R. 300.504(a) (2011). ED's Section 504 regulation also contains a notice requirement as part of the FAPE provisions. 34 C.F.R. §104.36 (2011). A parent seeking to utilize the IDEA's due process hearing procedures must meet the Act's statute of limitations – violations that occurred not more than two years before the date the parent knew or should have known about the alleged action subject to certain exceptions, or in such time as State law allows and subject to those same exceptions. 20 U.S.C. § 1415(b)(6)(B) and (f)(3)(D); 34 C.F.R. 300.507(a)(2) and 300.511(f) (2011). The Section 504 regulation also provides for an opportunity for an impartial hearing and an IDEA due process hearing may be used to meet both laws. 34 C.F.R. 104.36 (2011). Likewise, an individual or organization seeking to file a complaint with the SEA under the IDEA's State complaint procedures must do so within one year. 34 C.F.R. 300.153(c) (2011). If the Agreement augments or limits these IDEA and Section 504 individual rights and processes, notice to the class members is important.

## CONCLUSION

Based upon the foregoing, the United States respectfully requests the Court to ensure that any final Agreement expressly address how the Commonwealth of Pennsylvania and the Chester Upland School District will meet their statutory responsibilities to assure that needed compensatory education and other redress is available to eligible students with disabilities who have been denied FAPE; and that class members receive timely and appropriate notice of the individual rights, remedies, and procedures of the IDEA and Section 504, as well as the impact of the Agreement, if any, on those rights, remedies and procedures.

Dated: August 13, 2012

Respectfully submitted,

ZANE DAVID MEMEGER
United States Attorney
Eastern District of Pennsylvania
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
Telephone: (215) 861-8200
Facsimile: (215) 861-8618

THOMAS E. PEREZ
Assistant Attorney General

/s/ Jonathan Fischbach
ANURIMA BHARGAVA
RENEE WOHLENHAUS
JONATHAN FISCHBACH
United States Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, NW, PHB 4300
Washington, D.C. 20530
Telephone: (202) 514-4092
Facsimile: (202) 514-8337
Jonathan.Fischbach@usdoj.gov

PHILIP H. ROSENFELT
FRANCISCO LOPEZ
RHONDA WEISS
United States Department of Education
Office of the General Counsel
400 Maryland Ave., SW
Washington, DC 20202
Telephone: (202) 401-6000
Facsimile: (202) 260-2972
Francisco.Lopez@ed.gov

STACEY L. B. SMITH
Assistant United States Attorney
United States Attorney's Office
615 Chestnut Street, Ste. 1250
Philadelphia, PA 19106
(215) 861-8348

## CERTIFICATE OF SERVICE

      I hereby certify that on August 13, 2012, I served copies of the United States' Statement of Interest to counsel of record, which has been filed electronically and is available for viewing and downloading via ECF, to be served via electronic service through the court's electronic filing system, or alternatively via overnight mail, addressed to:

**COUNSEL FOR PLAINTIFFS**
Sonja D. Kerr
Michael Churchill
Public Interest Law Center of Philadelphia
1709 Benjamin Franklin Pkwy
Second Floor
Philadelphia, PA 19107

**COUNSEL FOR DEFENDANTS**
Amy C. Foerster
Corey Scott Winter
Michael A. Finio
Saul Ewing LLP
2 North Second St., 7th Fl
Harrisburg, PA 17101

**COUNSEL FOR DEFENDANT**
John P. Krill, Jr.
Thomas T. Decesar
K&L Gates LLP
17 North Second Street, 18th Floor
Harrisburg, PA 17101-1507

**COUNSEL FOR DEFENDANT**
Kevin Michael Kelly
Kevin T. Kerns
Patrick J. O'Connor
Cozen O'Connor
1900 Market Street
Philadelphia, Pa 19103-3572

COUNSEL FOR MOVANT CHESTER COMMUNITY CHARTER SCHOOL

Thomas A. Leonard
Mathieu Shapiro
Obermayer, Rebmann, Maxwell & Hippel, LLP
1617 John F. Kennedy Boulevard
19th Floor, One Penn Center
Philadelphia, PA 19103-1895

COUNSEL FOR MOVANT PARENTS OF STUDENTS AT CHESTER COMMUNITY CHARTER SCHOOL

Jeffery A. Dailey
Natalie Lesser
Akin Gump Strauss Hauer & Feld LLP
Two Commerce Square
2001 Market Street, Ste 4100
Philadelphia, PA 19103

COUNSEL FOR INTERVENOR PLAINTIFF - DELAWARE COUNTY INTERMEDIATE UNIT

Michael V. Puppio, Jr.
Raffaele & Puppio, LLP
19 West Third Street
Media, PA 19063

COUNSEL FOR INTERVENOR PLAINTIFF - PENNSYLVANIA STATE EDUCATION ASSOCIATION

Lynne L. Wilson
PA State Education
400 N. Third Street
P.O. Box 1724
Harrisburg, PA 17105

INTERVENOR PLAINTIFF - CHESTER COMMUNITY CHARTER SCHOOL

Arlen Spector
Law Offices of Arlen Spector
1525 Locust Street, 19th Floor
Philadelphia, PA 19102

INTERVENOR PLAINTIFF – NAACP-PA

Gregg L. Zeff
The Law Office of Gregg L. Zeff
100 Centry Parkway #305
Mt Laurel, NJ 08054

/s/ _____